# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| OWLET BABY CARE, INC.,<br><br>      Petitioner,<br><br>vs.<br><br>MASIMO CORPORATION and CERCACOR LABORATORIES, INC.<br><br>      Respondents. | **DECLARATION OF JACOB BRIEM IN SUPPORT OF MOTION TO QUASH SUBPOENA**<br><br>Case No. 2:21-mc-00096-TS |

I, Jacob Briem, hereby declare and state as follows:

1. I am over the age of eighteen and am competent to make the following statements based upon my personal knowledge.

2. I am an attorney licensed to practice law in the State of Utah. I currently serve as General Counsel for Owlet Baby Care, Inc. ("Owlet").

3. Owlet is a Delaware corporation with its principal place of business at 2500 Executive Pkwy, Lehi, Utah 84043.

4. Owlet makes baby monitors and other baby-care products that incorporate pulse-oximeter technology. A pulse oximeter is a device that measures a user's pulse rate and oxygen saturation level. Owlet's flagship product, the Smart Sock, is a pulse oximeter and baby monitor that alerts parents via a smartphone application if their baby's oxygen level and heart rate drop to an unsafe level.

5. Owlet's pulse oximeters measure pulse rate and oxygen saturation by using a series of highly confidential and proprietary algorithms.

6.        These algorithms are Owlet's most valuable trade secrets and a key aspect of Owlet's competitive advantage in the pulse-oximeter marketplace.

7.        On January 19, 2021, Owlet was personally served with a subpoena from Masimo Corporation and Cercacor Laboratories (collectively, "Masimo") in connection with a civil action pending in the United States District Court for the Central District of California, styled *Masimo Corporation and Cercacor Laboratories v. True Wearables, Inc. and Marcelo Lamego*, 8:18-CV-02001-JVS-JDE.  Owlet is not a party to this lawsuit.

8.        Owlet is familiar with both Masimo and the Defendant in the underlying lawsuit, True Wearables.  Both Masimo and True Wearables manufacture and sell pulse oximeters and are Owlet's competitors in the pulse-oximeter industry.

9.        Owlet has never worked with Masimo, True Wearables, or, to Owlet's knowledge, any of their current or former employees.  Owlet has at all times operated at arm's length from Masimo and True Wearables, having no substantive interactions with either company.

10.       Masimo's subpoena contains four Requests for the Production of Documents, each of which asks for documents concerning the algorithms Owlet uses for measuring pulse rate and oxygen saturation in humans.  *See* Ex. A to Owlet's Motion to Quash at 5-6.

11.       Accordingly, complying with this subpoena would require Owlet to disclose its valuable and confidential algorithms and most sensitive trade secrets to Masimo, a direct competitor.

12.       The disclosure of these algorithms to a competitor would harm Owlet's competitive advantage in the pulse-oximeter industry by showing Masimo exactly how Owlet measures pulse rate and oxygen saturation.  In other words, if Owlet is forced to respond to

Masimo's subpoena, Owlet will be divulging to a direct competitor the very basis of its competitive advantage. Eliminating this competitive advantage between Owlet and its competitor would harm Owlet's business.

13. To date, Masimo has not provided any reason or justification for why it needs Owlet's algorithms. I understand that Owlet's counsel has received no responsive communications from Masimo, despite serving responses and objections along with a cover letter explaining Owlet's positions and providing relevant authority, several weeks ago.

14. As an attorney who is also deeply familiar with Owlet's business and the pulse-oximeter industry, I cannot think of any legitimate scenario in which Owlet's algorithms would be helpful, let alone necessary, to Masimo in its lawsuit against True Wearables. Based on my review of the operative Complaint, Masimo's suit solely concerns the actions of Marcelo Lamego, True Wearables' founder and Masimo's former employee, and has nothing to do with Owlet's algorithms, products, or business.

15. In addition, responding to Masimo's subpoena as it is presently drafted would cause Owlet to endure a substantial burden of time and expense. Masimo's document requests, particularly Request Nos. 2 through 4, set no parameters whatsoever around the types of documents Masimo seeks, leaving Owlet to guess at what it must produce. *See id*.

16. On their face, Masimo's requests could encompass every email concerning every decision made about Owlet's algorithms since Owlet's inception, thus requiring Owlet to gather thousands, and potentially hundreds of thousands, of emails and other responsive documents.

17. In order to complete the requisite search for potentially compliant documents, Owlet would have to take its employees away from their normal duties for extended periods of time to search through their respective records. Because the requests, on their face, potentially

encompass all algorithm-related documents going back to Owlet's inception, this may require diverting the time and attention of Owlet's co-founders and high level executives.

18. Accordingly, this diversion would cause further hindrance to Owlet's business and will result in considerable expense to Owlet.

DATED this 17th day of February, 2021

DocuSigned by:

319E473C73974DA...

Jacob Briem