MANNING CURTIS BRADSHAW
& BEDNAR PLLC
Jess M. Krannich, #14398
Michael E. Harmond, #17230
136 E. South Temple, Suite 1300
Salt Lake City, Utah 84111
Telephone:  (801) 363-5678
Facsimile:   (801) 364-5678
jkrannich@mc2b.com
mharmond@mc2b.com

*Attorneys for Petitioner Owlet Baby Care, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| OWLET BABY CARE, INC., <br><br> Petitioner, <br><br> vs. <br><br> MASIMO CORPORATION and CERCACOR LABORATORIES, INC. <br><br> Respondents | **REPLY IN SUPPORT OF MOTION TO REOPEN CASE AND RECONSIDER ORDER DENYING OWLET'S MOTION татQUASH WITHOUT PREJUDICE** <br><br> Case No. 2:21-mc-00096-TS-JEB |

Petitioner Owlet Baby Care, Inc. ("Owlet") respectfully submits this Reply in support of its Motion to Reopen Case and Reconsider the Order Denying Its Motion to Quash Without Prejudice[1] (the "Motion").

## INTRODUCTION

This is not a typical or unsupported motion for reconsideration in which a party rehashes old arguments and seeks a second bite at the apple.  Owlet received a subpoena that purported to command compliance in a distant forum, in violation of Federal Rule of Civil Procedure 45(c), in

---

[1] ECF No. 6.

a lawsuit between parties with which it has no involvement. Owlet's objections to this subpoena were met with radio silence, as were its follow-up communications prior to the filing date. Left with little choice but to try and quash the subpoena to preserve its rights, Owlet moved to do so. The Court rejected this Motion on a basis that Owlet did not raise and upon which Owlet had no opportunity to be heard, further instructing Owlet to refile in the distant forum Owlet sought to escape. Before being forced into this distant forum, Owlet seeks to persuade the Court on why that forum is not the correct place of compliance under Rule 45, but was referenced in Masimo's subpoena solely because Masimo erred and violated Rule 45(c).

Masimo's opposition to Owlet's Motion reveals that, like Owlet, it would prefer to litigate its improperly issued subpoena on its home turf. But unlike Owlet, unless the Court reconsiders its Order, Masimo has secured its preferred outcome by simply erroneously listing the Central District of California as the place of compliance on the subpoena. The paltry evidence submitted by Masimo to show that Owlet regularly transacts business in person in the Central District of California does not save its facially defective subpoena, and, as set forth below, Owlet does not, under any recognized interpretation of the phrase, "*regularly* transact business *in person*" within 100 miles of that district. Rule 45(c)(2)(A) (emphasis added).[2] Accordingly, for the reasons set forth below and in its Motion, Owlet asks the Court to reopen this case, reconsider its Order, and rule that the District of Utah is the proper place of compliance for Masimo's subpoena.

---

[2] Moreover, Masimo's attempts to belatedly confer on the subpoena's substance are irrelevant to this Motion, which Owlet brings to assure local resolution of this dispute. That said, while Masimo now highlights these attempts, it completely ignored the meet-and-confer overtures Owlet made before being forced to file its Motion to Quash. See Ex. 1 to Opposition, pp. 6-7.

> I.  **Owlet Does Not Regularly Transact Business In Person Within 100 Miles of the Central District of California**

Owlet does not regularly transact business in person within 100 miles of the Central District of California, and Masimo's contextless screenshots and Linkedin profiles do not prove otherwise.  Under Rule 45, a subpoena may command compliance only at "a place within 100 miles of where [a] person resides, is employed, or regularly transacts business in person."[3] Courts have held that a corporation regularly transacts business in person when they have offices or other physical locations within 100 miles of the place in question.  *See, e.g., Trustees of Boston Univ. v. Everlight Electronics, Co., Ltd.*, No. 12-cv-11935-PBS, 2014 WL 12792496, at *3 (D. Mass. Sept. 8, 2014) (denying Apple's motion to quash because, while "Apple's corporate headquarters, principal place of business, and any relevant documents [were] located in or near Cupertino, California," it had "two offices and four retail locations in Massachusetts," where compliance was sought).  *Raap v. Brier & Thorn*, No. 17-MC-3001, 2017 WL 2462823, at *1 (C.D. Ill. Jul. 7, 2017) (subpoenaed bank did not regularly transact business within 100 miles of Madison, Wisconsin because its closest "branch location" was in Springfield, Illinois).  In cases where a corporation has just one physical location, courts have found that it regularly transacts business in person at that location, its principal place of business.  *See Merlin Petroleum Co., Inc. v. Sarabia*, No. 8:16-cv-1000, 2016 WL 9244728, at *1 (M.D. Fla. Aug. 4, 2016) (quashing subpoena commanding compliance in Jacksonville, 200 miles from subpoenaed party's principal place of business in Tampa).

---

[3] Owlet is not, as Masimo claims, asking the Court for a narrower interpretation of this standard. Owlet simply uses the phrase "the location where the subpoenaed party resides" as a shorthand reference in its Motion.

In addition, for someone to *regularly* transact business in person, their in-person activity in a specific location must be significant.  "[F]ourteen to eighteen days in two years" in one location has been found "insufficient," as has "twice yearly visits," and "ten times in seven years."  *M-Baye v. New Jersey Sports Production, Inc.*, 246 F.R.D. 205, 207-08 (S.D.N.Y. 2007) (collecting cases) (citations omitted).  In contrast, "four times a year, staying approximately ten days each trip, for a period of ten years," has been found to meet the standard.  *Id.* (quoting *Halliburton Energy Servs., Inc. v. M-I, LLC*, No. H06-MC-00053, 2006 WL 2663948, *2 (S.D. Tex. 2006)).

Masimo's screenshots and Linkedin profiles do not comport with this authority.  Owlet has no physical office or location within 100 miles of the Central District of California.  *See* Decl. of Jacob Briem at 1, attached hereto as Ex. A.  And although it is true that the "Sarah S." referenced in the partially-obscured Linkedin profile submitted by Masimo is a recently hired Owlet employee living in California, her presence there is starkly different from the offices and retail locations that have been found to constitute the regular transaction of business in person.  The fact that "Sarah S." lives in California is irrelevant to her job at Owlet.  *Id.* at 2.  She manages an internal Owlet team that develops Owlet products and is a mid-level employee with no customer interaction.  *Id*.  Her presence in California is therefore a far cry from Apple's "two offices and four retail locations" or even the single bank branch location in *Raap*.  *Trustees of Boston Univ.*, 2014 WL 12792496, at *3.

Moreover, Jill Spivack and Jennifer Waldburger, whose profiles Masimo also submitted, are not Owlet employees, but the owners of a non-party business called Sleepy Planet that Owlet hired to develop its Dream Lab product.  *See* Decl. of Jordan Monroe at 1-2, attached hereto as Ex. B.  All of the material in-person contact in this relationship took place in Utah, and all of the

Dream Lab content on Owlet's website featuring Jill and Jennifer was filmed in Utah with the exception of one photoshoot in California (which, as indicated above, does not rise to any level of regularity).  *Id*.  Owlet paid Sleepy Planet a fee for this content and pays Sleepy Planet an ongoing royalty based on sales of the Dream Lab product, but none of this occurs in person or within 100 miles of the Central District of California.  *Id*.  In short, Masimo's screenshots and Linkedin profiles do not prove that Owlet regularly transacts business in person within 100 miles of the Central District of California, and Masimo's post-hoc attempt to show otherwise does not save its facially defective subpoena.

## II.     The District of Utah Is the Proper Place of Compliance For Masimo's Subpoena

Despite Masimo's contrary claim, Rule 45's plain language mandates compliance in the District of Utah.  Although it is axiomatic that "[s]tatutes must 'be read as a whole,'" *U.S. v. Atlantic Research Corp.*, 551 U.S. 128, 135 (2007) (citation omitted)), Masimo asks the Court to focus solely on Rule 45(d)(3)(A)(ii) and conclude that this subsection "necessarily links compliance with the location where the documents are to be sent[]."  Opposition at 6 (citation omitted).  But this reading ignores Rule 45(c)(2)(A), which, as other courts have noted, "tether[s]" compliance "to the location of the subpoenaed person."  *Agincourt Gaming, LLC v. Zynga, Inc.*, No. 2:14-cv-0708-RFB, 2014 WL 4079555, at *4 (D. Nev. Aug. 15, 2014).  Read as a whole, "[t]he text of the [r]ule does not provide for an alternative basis . . . to find that the place of compliance is not tethered to the subpoenaed person's location."  *Id*.; *Youngevity Int'l, Corp. v. Smith*, No. 16-cv-704-BTM, 2017 WL 6418961, *3 (S.D. Cal. Dec. 15, 2017).

Beyond Rule 45's text, it is critical to note that decisions tying the place of compliance to the location listed in the subpoena are rooted in practical concerns that ultimately do not outweigh the burden imposed on nonparties or Masimo's erroneous designation in the subpoena

at issue here.  These decisions find it "impractical" for a court to determine if a subpoena violates Rule 45(c) before determining whether it is the proper compliance court.  *See Adams v. Symetra Life Ins. Co.*, No. 19-MC-401-EFM, 2020 WL 489523, at *2 (D. Kan. Jan. 28, 2020) (citing *CSS, Inc. v. Herrington*, 354 F. Supp. 3d 702, 709-10 (N.D. Tex. 2017)).  But they reach this conclusion "notwithstanding any concerns with requiring a nonparty to adjudicate a dispute over a subpoena in a distant forum."  *CSS, Inc.*, 354 F. Supp. 3d at 710 (recognizing but ultimately discounting "the concern that Rule 45's 'purpose of protecting nonparties is defeated'" if compliance can be demanded in an improper forum) (quoting *Raap*, 2017 WL 2462823, at *3).

      Accordingly, contrary to Masimo's claim, nonparty concerns about burden and expense are highly relevant to determining a subpoena's proper place of compliance.  Courts' emphases on practical concerns show that this is not a cold jurisdictional issue, but one that requires weighing the practical inconvenience on courts with the practical burden on nonparties.  And when these concerns are viewed together, the burden on nonparties—who must appear in distant forums and comply with those forums' short-form discovery procedures—clearly outweigh the burden on courts, who, given the lack of precedential authority on this issue may—and frequently do—decide Rule 45(c) issues at the outset.  *See Raap*, 2017 WL 2462823, at *3; *Agincourt Gaming, LLC*, 2014 4079555, at *4.  The Advisory Committee notes' acknowledgement that "local resolution of disputes is _assured_ by the [geographical] limitations of Rule 45(c)" amply supports this conclusion.  (Emphasis added).

      Finally, forcing Owlet to quash this subpoena in the Central District of California absolutely disrupts the "prime concern" of "avoiding burdens on local nonparties."  Opposition, p. 8; Rule 45 Advisory Committee's note to 2013 amendment.  It is the exact burden Owlet presently seeks to avoid, and which Owlet asks the Court to alleviate by ruling that compliance

with Masimo's subpoena is required in the District of Utah. To hold otherwise allows a party to demand compliance in any district of their choosing and to force a nonparty to any convenient forum, divorced from any analysis of whether the forum is correct.

### III. Owlet's Circumstances Properly Justify Reconsideration

*A. Owlet Properly Seeks Reconsideration On the Grounds That the Court's Order, Issued Without the Benefit of Adversarial Briefing, Misapprehended the Controlling Law*

Contrary to Masimo's assertions, Owlet properly seeks reconsideration on the basis that the Court's Order misapprehended the controlling law, which here is Federal Rule of Civil Procedure 45. The Tenth Circuit has clearly stated that "a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law."[4] *See, e.g., Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Section II of Owlet's Motion states that Owlet seeks reconsideration on this basis. Motion at 6.[5]

Moreover, Masimo's own authority recognizes that "[a] motion for reconsideration performs a valuable function where 'the Court . . . has made a decision outside the adversarial issues presented . . . by the parties.'" *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99

---

[4] This standard, rather than the one cited by Masimo in *Whittington v. Taco Bell of Am., Inc.*, No. 10-cv-01184-KMT-MEH, 2012 WL 2705046, at *2 (D. Colo. Aug. 27, 2012), is the proper standard for evaluating a motion for reconsideration. Owlet has not "fail[ed] to acknowledge" *Whittington*. Opposition, p. 4. To the contrary, any standard articulated in *Whittington*, a District of Colorado case that cites only to other District of Colorado cases for its standard, is entirely persuasive and not binding on this Court.

[5] Citing to *Servants of Paraclete*, Masimo claims that "only three narrow circumstances" warrant reconsideration: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." 204 F.3d at 1012. But as courts have recognized, these are the "three *major* grounds" justifying reconsideration," not, as discussed above, the only available grounds. *Salt Lake Tribune Publishing Co., LLC v. Mgmt. Planning, Inc.*, 2005 WL 8176507, at *1 (D. Utah Dec. 7, 2005) (quoting *Ekotek Site PRP Committee v. Self*, 932 F. Supp. 1319, 1322 (D. Utah 1996)).

F.R.D. 99, 101 (E.D. Va. 1983)). This is the exact situation presented here, as Owlet's Motion to Quash was denied on a basis outside of those presented through the adversarial process. Reconsideration thus performs the valuable function of allowing the Court to consider this basis with the benefit of adversarial briefing and, Owlet submits, reach the interpretation of Rule 45 most in line with the rule's text and practical concerns, as discussed above.

Owlet recognizes that "problems" justifying reconsideration "rarely arise" and that "motion[s] to reconsider should be equally rare." *Bank of Waunaukee*, 906 F.2d at 1191. But this situation—where a decision outside the adversarial issues presented to the Court will result Owlet being forced into a distant and improper forum to resolve a subpoena dispute in a lawsuit with which it has no connection—is one of these problems and is properly addressed by Owlet's Motion.

    B. *Owlet Did Not and Could Not Have Raised Arguments On a Subpoena's Proper Place of Compliance In Its Short-Form Discovery Motion*

Although Masimo tries to punish Owlet for complying with DUCivR 37-1's word limit, the fact remains that the word limit precluded Owlet from addressing the complex issue of a subpoena's proper place of compliance (which had not been decided in this district until after Owlet filed its Motion to Quash). Forcing Owlet to address this allegedly "threshold" issue through the short-form discovery format leaves it with an impossible choice: perform a one-to-two sentence analysis, which would almost certainly not be enough to address the Court's concerns, or perform an in-depth analysis to the neglect of Owlet's substantive objections. But even if Owlet chose the latter path, the rule's 500-word cap would still allow only for the most cursory analysis on this important issue of first impression and force Owlet to sacrifice its substantive objections simply to establish jurisdiction which was previously not in dispute.

The better way to address such complicated questions is through extended briefing. Without an opportunity for extended briefing, requiring parties to address threshold jurisdictional questions in a 500-word short-form motion is impracticable and reads into the already-cramped DUCivR 37-1 both a mandatory jurisdictional statement and, if a party seeks reconsideration, a preservation rule. So while federal courts must address jurisdiction before reaching the merits of a statutory question, that does not automatically mean that litigants must comprehensively address those questions in a limited short-form motion without an opportunity for extended briefing. Masimo's claim that "nothing prevented Owlet from addressing this threshold question," Opposition at 6, thus ignores the impracticability of doing so under DUCivR 37-1.

Finally, the fact that Owlet cited Rule 45(d)(3)(A)(ii) in its Motion to Quash does not mean that Owlet raised the issue of a subpoena's proper place of compliance in prior briefing. It is well-established that merely citing a rule does not constitute substantive argument. *See, e.g., Nat. R. R. Passenger Corp. v. Cimarron Crossing Feeders, LLC*, No. 16-cv-1094-JTM, 2018 WL 489100, at *1 (D. Kan. Jan. 19, 2018) (denying motion for protective order where moving party "merely cit[ed] Rule 26(c)).[6] In sum, DUCivR 37-1's word-limit precluded Owlet from addressing the issue of a subpoena's proper place of compliance, and Owlet properly seeks to the opportunity to do so now.

---

[6] This likewise belies Masimo's point that Owlet "provided adversarial briefing" on this issue in its Motion to Quash. Opposition at 3. Moreover, whether or not Owlet introduced evidence that it does not regularly transact business in person within 100 miles of the Central District of California is irrelevant to the issue of whether Owlet could have raised arguments regarding a subpoena's proper place of compliance in its Motion to Quash. Whether the Central District of California is the proper place of compliance and whether Owlet resides or regularly transacts business in person in that district are two separate issues. Masimo's argument on this point is therefore without merit.

## CONCLUSION

For the foregoing reasons, Owlet respectfully asks this Court to reopen this case and reconsider its Order denying Owlet's Motion to Quash.

DATED this 26th day of March, 2021.

MANNING CURTIS BRADSHAW
& BEDNAR PLLC

/s/ Jess M. Krannich
Jess M. Krannich
Michael E. Harmond
*Attorneys for Petitioner*
*Owlet Baby Care, Inc.*

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 26th day of March, 2021, a true and correct copy of the foregoing **REPLY IN SUPPORT OF MOTION TO REOPEN CASE AND RECONSIDER ORDER DENYING OWLET'S MOTION TO QUASH WITHOUT PREJUDICE** was served upon the following counsel of record via the method indicated below.

| | |
|---|---|
| \_\_\_HAND DELIVERY<br>\_\_\_U.S. MAIL<br>\_\_\_FAX TRANSMISSION<br>\_\_\_E-MAIL TRANSMISSION<br>  X   CM/ECF | James T. Burton<br>jburton@kmclaw.com<br>Joshua S. Rupp<br>jrupp@kmclaw.com<br>**KIRTON \| McCONKIE, PC**<br>36 S. State Street, Suite 1900<br>Salt Lake City, Utah 84111<br><br>Stephen C. Jenson<br>stephen.jensen@knobbe.com<br>Perry D. Oldham<br>perry.oldham@knobbe.com<br>Brian C. Claassen<br>brian.claassen@knobbe.com<br>**KNOBBE, MARTENS, OLSON & BEAR, LLP**<br>2040 Main St., 14th Fl.<br>Irvine, CA 92614<br><br>*Attorneys for Respondents* |

        /s/ Jess M. Krannich

11